UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 24-cv-60618

LIANGSWORD LIMITED,

    Plaintiff,

v.

THE PARTNERSHIPS,
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A,

    Defendant.
_____/

**Defendants' Response in Opposition to
Plaintiff's Motion for Entry of a Preliminary Injunction**

The Defendants set forth in Schedule A, attached hereto (collectively, "Defendants")[1], by and through undersigned counsel, hereby respond in opposition to Plaintiff's Motion for Entry of a Preliminary Injunction [D.E. 27] ("Motion for Preliminary Injunction"), and, in support thereof, argue as follows:

**I.    Procedural Background**

On April 16, 2024, Plaintiff, Liangsword Limited ("Plaintiff"), filed its Complaint against, *inter alia*, Defendants "to combat the willful and intentional counterfeiting and infringement of its federally registered FACEGA trademark." *See* [D.E. 27, pg. 2]. On May 20, 2024, Plaintiff filed its Motion for Preliminary Injunction seeking to extend the relief granted pursuant to Court's Order Granting Plaintiff's *Ex Parte* Motion for Entry of a Temporary Restraining Order, including,

---

[1] Unless otherwise stated, the Defendants are independent entities, with their own independent defenses against the claims alleged by Plaintiff. Notwithstanding, Defendants provide this response as a whole for the purpose of opposing Plaintiff's Motion for Preliminary Injunction.

without limitation, enjoining use of Plaintiff's FACEGA trademark, as well as freezing all of the Defendants' accounts related with their respective associated storefronts. *See* [D.E. 20, D.E. 27].

However, this is not case in which the Court should grant or further extend any relief already provided to Plaintiff. In fact, it is Defendants who have been harmed by way of being dragged into frivolous claim stemming from fraud committed on the Court and/or the applicable marketplace(s). To be clear, at no point in time have Defendants ever willingly or knowingly utilized Plaintiff's FACEGA trademark for any reason. Plaintiff's entire case against Defendants is premised upon a fabrication and purposeful manipulation of facts in order to manufacture a trademark infringement claim pursuant to which Plaintiff could obtain a quick settlement and/or judgment against those unwilling or incapable to defend their rights. Defendants file this response in opposition not only to show that Plaintiff is not entitled to the equitable relief sought, but to inform the Court that the entirety of Plaintiff's claim is a façade.

For such reasons (as further explained below), Plaintiff is entitled to no further relief under Plaintiff's Motion for Preliminary Injunction, as Plaintiff is unlikely to succeed on the merits and has not brought its claims raised in its Complaint in good faith. As a result, any request for preliminary injunction (including, any relief relating thereto) must be denied.

II. **Argument**

   a. **Legal Standard**

An injunction is an extraordinary and drastic remedy not to be granted unless the movant has clearly established the burden of persuasion as to the prerequisites. *Siegel v. LePore,* 234 F.3d 1163, 1176 (11th Cir.2000). To obtain injunctive relief, a movant must satisfy four requirements: (1) "a substantial likelihood of success on the merits," (2) "that the preliminary injunction is necessary to prevent irreparable injury," (3) "that the threatened injury outweighs the harm the

preliminary injunction would cause the other litigant," and (4) "that the preliminary injunction would not be averse to the public interest." Chavez v. Fla. SP Warden, 742 F.3d 1267, 1271 (11th Cir. 2014).

Generally, the first element is the most important because granting a temporary restraining order or motion for preliminary injunction would be inequitable if the movant has no chance of success on the merits. Martinetti v. Tucker, 2012 WL 13071123 at *1 (S.D. Fla. May 8, 2012); *see also* Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed.Cir.2001) (stating a moving party is not entitled to a preliminary injunction unless it establishes both the likelihood of success on the merits and irreparable harm absent a preliminary injunction).

> **b. The preliminary injunction should not be granted because Plaintiff is unlikely to succeed on the merits of its case and/or Plaintiff's case has not been raised in good faith.**

Plaintiff's Complaint alleges four various trademark related claims – (i) trademark counterfeiting and infringement (15 U.S.C. § 1114), (ii) false designation of origin (15 U.S.C. § 1125(a)), (iii) common law unfair competition, and (iv) common law trademark infringement. To establish a claim for trademark infringement, Plaintiff must establish that Defendant "used the mark in commerce without its consent and that the unauthorized use was likely to deceive, cause confusion, or result in mistake." Nitro Leisure Products, L.L.C. v. Acushnet Co., 341 F.3d 1356, 1359 (11th Cir. 2003); *see also Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1216 (11th Cir. 2000) (stating to prevail on a claim of trademark infringement, a plaintiff must show (1) that it had a valid trademark, and (2) that the defendant adopted an identical or similar mark such that consumers were likely to confuse the two). A showing that Plaintiff is unlikely to succeed on the merits of its trademark infringement claims also disperses with the other trademark claims provided in Plaintiff's Complaint. *See, e.g.,* Slip-N-Slide Recs., Inc. v. TVT Recs., LLC, 2005 WL

8155006, at *11 (S.D. Fla. Sept. 30, 2005) (stating in order to prove a claim for false designation of origin, plaintiff must establish that defendant adopted a mark confusingly similar to plaintiff's mark such that there was a likelihood of confusion as to the origin of the goods); *see also* Ross Bicycles, Inc. v. Cycles USA, Inc., 765 F.2d 1502, 1503 (11th Cir. 1985) ("The factors relevant to establishing [false designation of origin] are identical to the factors relevant to establishing a likelihood of confusion with respect to trademark infringement under 15 U.S.C. § 1114."); *see* Monsanto Co. v. Campuzano, 206 F. Supp. 2d 1252, 1267 (S. D. Fla. 2002) (to state a claim for common law unfair competition, plaintiff must allege (1) deceptive or fraudulent conduct of a competitor, and (2) likelihood of consumer confusion).

As an initial matter, Plaintiff's Motion for Preliminary Injunction must be denied because Defendants never willfully, intentionally, or knowingly used Plaintiff's FACEGA trademark. Defendants' respective stores operate via Walmart's online marketplace (https://marketplace.walmart.com/) (the "Walmart Marketplace"). According to the Walmart Marketplace's, from time to time, there may be multiple sellers providing content for the same item, so sellers may not always be able to define which content will be displayed via their storefront. *See* screenshot below, and print out of webpage[2] attached as **Exhibit A**.

---

[2] Found at https://sellerhelp.walmart.com/s/guide?article=000007426&language=en_US (accessed June 18, 2024)

## How to Update Content: Overview

**In this article:**
Overview
How Does it Work?
Frequently Asked Questions
Helpful Resources

### Overview

Keeping your Walmart Marketplace catalog up to date with relevant and engaging content helps create a great shopping experience on Walmart.com. If you need to make an update your item's content including the item description or image, you can do so in a few ways. In this guide, we'll give you an overview of the different ways you can update your item's content.

### How Does it Work?

There may be multiple sellers providing content for the same item, so you may not always be able to define which content will be displayed on Walmart.com. Walmart will determine the best available content for items unless it is provided by a brand owner or authorized reseller. Items that cannot be updated will appear locked during the updating process.

Additionally, because multiple sellers may provide content for the same item, and sellers may not be able to determine the content displayed on their applicable storefront, the Walmart Marketplace informs sellers that another seller's content and imagery may be displayed for such seller's items **without the seller's consent**. *See* screenshot below, and print out of webpage³ attached as **Exhibit B**; *see also* **Exhibit B** ("FAQ: Why can't I update my item's content? – **Multiple Marketplace sellers can offer the same item on Walmart.com. Item content is algorithmically selected to appear on the Item Page. We look at each attribute separately to select the best content to display to deliver the best customer experience possible**.") (emphasis added).

---

³ Found at https://sellerhelp.walmart.com/s/faq?language=en_US&article=Items_and_Inventory_CMS_FAQ (accessed June 18, 2024).

> Seller Center
>
> **Frequently Asked Questions**
>
> What should I do if I have offers that are unpublished due to Reasonable Price Not Satisfied under the Pricing Rule?
>
> What should I do if I have offers that are unpublished due to Egregious Shipping Cost?
>
> My offer was unpublished but it's listed by another seller on Walmart Marketplace for the same or a higher item price. Why was my listing unpublished?
>
> I updated my inventory, why is my item still showing as "Out of Stock" on Walmart.com?
>
> How do I delete an item draft?
>
> Why can't I update my item's content?
>
> Where can I download the Full Item Spec?
>
> Why was my item unpublished?
>
> **Why is another seller's content and imagery displayed for my item?**
> Multiple Marketplace sellers can offer the same item on Walmart.com. Item content is algorithmically selected to appear on the Item Page. We look at each attribute separately to select the best content to display to deliver the best customer experience possible.

Accordingly, it is known that a seller's storefront that includes items also sold by another seller may contain content and/or imagery of such other seller on the seller's storefront without such seller's knowledge, input, or control based on the algorithmic selections made by the Walmart Marketplace to enhance the user experience. Only brand owners and authorized resellers are able to control the content that appears on the Walmart Marketplace. *See* **Exhibit A**. As a result, this mechanism allows users of senior drop ship vendor (DSV) supplier accounts to alter other merchant's (such as Defendants') listing content without the consent or knowledge of the merchant. *See* Dec. of Defendants, ¶ 3, attached hereto as **Exhibit C**.

Such is exactly the case here. Defendants never added Plaintiff's FACEGA trademark to, or consciously used such trademark in, the accused listings and were not aware that Plaintiff's FACEGA trademark had been added or included to its listings when making sales. *See* Dec. of

Defendants, ¶ 4. Furthermore, the Walmart Marketplace did not notify Defendants of any such changes or modifications in content and/or imagery as it related to Defendants' storefronts. *Id.*

Thus, the only reasonable explanation that could be used to explain Plaintiff's claims against Defendants is that Plaintiff (either directly or through an affiliate) took advantage of Walmart's policy of removing content control from certain sellers (such as Defendants) by using a senior DSV supplier account to alter Defendants' storefront listings to add Plaintiff's FACEGA trademark for the purpose of manufacturing its claims against Defendants in pursuit of obtaining a settlement and/or default judgement. *See* Dec. of Defendants, ¶ 5. This explanation is supported based upon review of Defendant's, SamFansar, storefront. Specifically:

- Defendant, SamFansar, sells a DIY Rectangle Knitting Loom Scarf Sweater Shawl Stitch Knit Weaving Tool that were all initially branded as "HEJX." *See* Dec. of Defendants, ¶ 6.

- The content of the listing page for the first variant[4] of the product was manipulated – without Defendant, SamFansar, prior knowledge or consent – to replace the branding "HEJX" with Plaintiff's FACEGA trademark. Defendant's, SamFansar, other variants were unchanged. An old order associated with the manipulated variant shows that the listing was originally branded "HEJX." *See Id.*

- Following research into when the listing was modified, Defendant, SamFansar, determined that the change occurred in March 2024, allowing Plaintiff to capture the alleged infringing use for the purpose of filing this Complaint. *See* Dec. of Defendants, ¶ 7.

The other Defendants joining in this response also suffered from manipulation of the content shown on their storefronts, in that they were also victims of unauthorized changes to the branding of the listed items sold thereon.

Walmart is well aware of the problematic behavior believed to have been utilized by Plaintiff for the purpose of bringing this Complaint. On June 1, 2024, counsel for the Walmart

---

[4] Per Walmart Marketplace, "A variant group is a group of individual items that only differ by a few attributes (for example, a pair of shoes that come in different colors or a T-shirt that comes in various sizes). The items in this group can be presented together on one item page." *See* https://sellerhelp.walmart.com/s/faq?language=en_US&article=Items_and_Inventory_CMS_FAQ (accessed June 18, 2024).

Marketplace contacted sellers (including Defendants), (i) stating that it was handling inquiries from sellers affected by the Plaintiff's TRO, (ii) offering to assist sellers affected by Plaintiff's TRO (including, such seller's legal counsel), and (iii) **stating that "it is highly recommended that you monitor your listings regularly and take immediate steps to remove changes to yours listings which are not made by you (in particular logo or trademarks of others)."** *See* Dec. of Defendants, ¶ 8 (Exhibit D attached thereto) (emphasis added). As such, even the Walmart Marketplace is aware that listings of certain sellers have been changed and/or modified without such seller's consent.

Taking the foregoing into account, it's clear that at no point in time has Defendants ever purposefully attempted to commercially exploit, trade off the goodwill of, or otherwise use Plaintiff's FACEGA trademark as a brand identifier for goods sold via Defendants' respective storefronts. For such reason, Plaintiff is not likely prevail on the merits of its trademark claims, and should not be warranted the extraordinary relief of a preliminary injunction – especially when taking into account that Plaintiff falsified evidence in order to substantiate its claims to obtain such relief.

    c. **The preliminary injunction should not be granted because Plaintiff is unable to satisfy the other elements required to obtain relief.**

Furthermore, the other elements required to grant preliminary injunction do not weigh in Plaintiff's favor. Firstly, the balancing of hardship does not tip in favor of issuing a preliminary injunction – the Court's granting of a preliminary injunction would only create a scenario in which bad actors (such as Plaintiff) are encouraged to fabricate and/or manipulate evidence to bring a claim for the sole purpose of achieving quick settlements and/or default judgments. Taking into account Defendants have not purposefully made use of Plaintiff's FACEGA trademark in commerce (as explained above), the balance of hardships tips in Defendants' favor, in that a

preliminary injunction effective serves as a freeze on Defendants' ability to conduct business, which consequence is unwarranted considering at no point in time did Defendants knowingly or willingly act in manner to infringe upon Plaintiff's FACEGA trademark. In sum, issuance of preliminary injunction serves as a punishment for a crime Defendants did not commit, but was rather bestowed upon them by Plaintiff in order for Plaintiff to seek a quick payday from Defendants.

Secondly – and for similar reason – public interest will not be served with the Court's entry of preliminary injunction. Contrarily, the Court's entry of preliminary injunction informs the public that even if an individual did not commit the alleged act and such individual asserts that the alleged act is the result of the opposing party's doing, the opposing party can still obtain relief by raising *ex parte* and/or blanket assertions that are blatantly untrue and the result of such party's own actions simply because such party was the first to file and provide the Court with a story the Court has no option to believe, notwithstanding the pursuit of justice. Plaintiff created evidence to bring a lawsuit against Defendants; the public interest is not served in instances where such bad faith conduct is rewarded.

Lastly, there is no threat of continued infringement if not enjoined, based on the fact that Defendants never marketed or intended to sell products under Plaintiff's FACEGA trademark and, therefore, any such listings should be and/or have been corrected to properly reflect the brands identifier such items should be sold under.

> **d. Plaintiff is not entitled to an asset restraint. Alternatively, at a minimum, the asset restraint should be limited to the amount that may possibly be recovered as profits through and equitable accounting.**

Because Plaintiff is not entitled to a preliminary injunction, Plaintiff's requested relief for an asset restraint should additionally be denied. Notwithstanding, even in the event the Court

believes preliminary injunction is warranted, case precedent mandates that no such restraint should be required. In exercising its discretion to modify[5] an asset restraint due to being overbroad, the court in *Awareness Ave. Jewelry LLC* stated the following:

> **[It does not appear] the Court that an asset freeze is required to ensure the availability of permanent equitable relief against the moving Defendants. The amount of funds in their accounts, the minimal profits they have obtained from the alleged infringement, and the fact that they have appeared by counsel in this lawsuit to respond to the complaint, all suggest that they will have funds to pay a judgment for disgorgement of profits if one is ultimately entered.**

Here, Defendants have appeared for the purpose of defending against Plaintiff's claims (as shown by the arguments presented above). Furthermore, Defendants have provided written confirmation to the Court that the Defendants will have funds to pay a disgorgement of profits if one is ultimately entered. *See* Dec. of Defendants, ¶ 11. Furthermore, the Defendants have sold a limited amount of alleged infringing products in exchange for minimal profits. *See* Dec. of Defendants, ¶ 9. Accordingly, there is no need for the Court to impose any asset restraint against Defendants.

Alternatively, should the Court deem restraint required, the amount of any asset restraint on the Defendants' accounts should be reduced to, at most, the profit from the Defendants' sales of allegedly-infringing products. The Supreme Court has held that district courts generally lack the authority "to issue a preliminary injunction preventing [a defendant] from disposing of [its] assets pending adjudication" of a plaintiff's claim for money damages. Grupo Mexicano de Dessarrolo v. Alliance Bond Fund, 527 U.S. 308, 333 (1999). Furthermore, "the general federal rule of equity is that a court may not reach a defendant's assets unrelated to the underlying litigation and freeze

---

[5] In *Awareness Ave. Jewelry LLC*, the Court exercised its discretion to modify the preliminary injunctive relief previously granted to the extent of eliminating the asset restraint. 2023 WL 3568387, at *2 (M.D. Fla. May 19, 2023).

them so that they may be preserved to satisfy a potential money judgment." Charter Sch. Cap., Inc. v. N.E.W. Generation Preparatory High Sch. of Performing Arts, Inc., 2015 WL 11201180 at *3 n. 3 (S.D. Fla. June 2, 2015) (internal citations omitted). Prejudgment asset restraints, therefore "should not include…financial accounts which bear no nexus to the alleged improper activities." F.T.C. v. Washington Data Res., 2011 WL 3566612 at *4 (M.D. Fla. July 15, 2011), *report and recommendation adopted*, 2011 WL 3566208 (M.D. Fla. Aug. 12, 2011); U.S. Commodity Futures Trading Comm'n v. E-Metal Merchants, Inc., 2006 WL 8432005 (S.D. Fla. Jan. 9, 2006) ("any funds not reasonably related to the ultimate relief requested by Plaintiff should be released."); *see also*, Animale Grp. Inc. v. Sunny's Perfume Inc., 256 F. App'x 707, 708 (5th Cir. 2007), *quoting*, Deckert v. Independence Shares Corp., 311 U.S. 282, 289-91 (1940) (noting that prejudgment asset restraints are limited to cases seeking equitable relief, where they are narrowly drawn "to sequester only those funds necessary to satisfy the potential judgment.").

Applying these principles, any prejudgment asset restraint should be limited to amounts that the plaintiff is reasonably likely to recover pursuant to an equitable accounting of profits in this case. 15 U.S.C. § 1117(a); Cengage Learning, Inc. v. Doe 1, 2018 WL 2244461, at *3 (S.D.N.Y. Jan. 17, 2018); Lions Gate Films Inc. v. Does, 2014 WL 3895240, at *7 (C.D. Cal. Aug. 8, 2014); Absolute Activist Value Master Fund Ltd. v. Devine, 2016 WL 1572388 at *5 (M.D. Fla. Apr. 19, 2016) ("The asset freeze, however, may not preserve any amount of assets in excess of the equitable relief sought."); Chanel, Inc. v. 83bab.com, 2014 WL 11881008 (S.D. Fla. June 19, 2014), *report and recommendation adopted*, 2014 WL 11881007 (S.D. Fla. July 11, 2014) (refusing to extend asset freeze to Defendants accounts where there was an insufficient showing that the "accounts also contain illegal profits from the sale of the [counterfeit] goods."); *see also*, Deckers Outdoor Corp. v. P'ships & Unincorporated Assocs. Identified on Schedule A,

2013 WL 12314399, at *2 (N.D. Ill. Oct. 31, 2013) ("[W]here equitable relief is sought, the appropriate scope of prejudgment restraint must be limited only to what is reasonably necessary to secure the (future) equitable relief. For example, where (as here) a litigant seeks the equitable remedy of an accounting of profits, then if the amount of the profits is known, then the asset freeze should apply on to that specific amount, and no more... In other words, the asset-restraint order must be limited only to the extent that is needed to secure the equitable remedy; the scope of the exception (to the general ban on prejudgment restraint) is limited by the scope of the exception's rationale."); Levi Strauss & Co., 51 F.3d at 987 (concluding that the "district court had the authority to freeze those assets which could have been used to satisfy an equitable award of profits" in a Lanham Act case); McCarthy on Trademarks and Unfair Competition § 30:40 (4th ed.) (the purpose of freezing assets is to preserve "security for plaintiff's future recovery on an accounting of the counterfeiter's profits."); F.T.C. v. Bishop, 425 F. App'x 796, 798 (11th Cir. 2011) ("The district court abused its discretion by imposing too broad of an asset freeze without making any reasonable approximation of Defendant-Appellant's ill-gotten gains.").

Collectively, Defendants have sold 96 orders of the accused products for a total revenue of $742.76. *See* Dec. of Defendants, ¶ 9. The amount restrained (~$208,000) far exceeds the total revenue earned from Defendants' alleged infringing activities. Accordingly, the amount of any asset restraint on Defendants' accounts should be reduced to, at most, $742.76.

### III. Conclusion

For the reasons set forth above, Defendants request that the Court deny Plaintiff's Motion for Preliminary Injunction, and grant such further relief at the Court deems just and appropriate.

Dated:           June 18, 2024

          Respectfully submitted,

/s/Darren Heitner
HEITNER LEGAL, P.L.L.C.
215 Hendricks Isle
Fort Lauderdale, FL 33301
darren@heitnerlegal.com
Ph.     (954) 558-6999
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2024, a true and correct copy of the foregoing was electronically filed using CM/ECF, which serves electronic notice on all counsel of record and registered CM/ECF users.

By: [signature]

DARREN A. HEITNER

## Schedule A

| 6 | BRAVE CAPS |
|---|---|
| 11 | LUCKY COKIE |
| 15 | YUANQUQU |
| 27 | Toudaret |
| 45 | Austpious |
| 46 | Monthly |
| 53 | Ptetnvg |
| 63 | Six6686 |
| 64 | MIANLAN |
| 81 | Caizhitong Trading Co., Ltd. |
| 108 | SamFansar |
| 112 | Uehgn |
| 128 | Enjoymoment |
| 163 | Viasears Beauty Inc |