UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-60618-CIV-SINGHAL

LIANGSWORD LIMITED,

    Plaintiff,

v.

THE PARTNERSHIPS, UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE
A,

    Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court on Plaintiff Liangsword Limited's Motion for Entry of a Preliminary Injunction (the "Motion") (DE [27]). The Court held a hearing on Plaintiff's Motion on June 6, 2024, at which the following Defendants appeared:

- Toudaret (Def. No. 27), Austpious (Def. No. 45), Monthly (Def. No. 46), Ptetnvg (Def. No. 53), SamFansar (Def. No. 108), Uehgn (Def. No. 112), and Viasears Beauty Inc (Def. No. 163), represented by Alan Mensa-Wilmot of Heitner Legal, P.L.L.C. (collectively, the "Heitner Defendants").[1] *See* (DE [60]).

- Defendants Ailytec Inc (Def. No. 17), Zuk Vape LLC (Def. No. 166), Orchip (Def. No. 137), and EVER BESTSALES LLC (Def. No. 139), represented by Lydia Pittaway of Ford Banister LLC (collectively, the "Pittaway Defendants"). *See* (DE [61]).

- Defendants DTREELSY (Def. No. 55), WAITLOVER (Def. No. 68), Yinqiang E-commerce Co. Ltd (Def. No. 86), YUANBEN (Def. No. 125), MJahhsay (Def.

---

[1] Iaukyu (Def. No. 48) and Isiaeian (Def. No. 94) also appeared at the hearing through Alan Mensa-Wilmot, *see* (DE [60]), but these two defendants were subsequently dismissed from this action. *See* (DE [64]).

No. 126), YINSI (Def. No. 22), NUOLIXI Trading Co., Ltd. (Def. No. 38), XUTI (Def. No. 23), XIUJI (Def. No. 29), ZHXXCUM (Def. No. 54), Bianzhoubolu (Def. No. 99), Yimei Store (Def. No. 96), icolorfuled (Def. No. 44), and Foxnovo Store (Def. No. 145), represented by Timothy Wang of Ni, Wang & Massand, PLLC (collectively, the "Wang Defendants").  *See* (DE [54]).

*See* (DE [63]).[2]  The Heitner,[3] Pittaway, and Wang Defendants (collectively, "Responding Defendants") filed Responses to Plaintiff's Motion.  *See* (DE [82], [91] & [89]).  Plaintiff filed Replies to each of the three Responses.  *See* (DE [127], [128] & [119]).  Accordingly, this Motion is ripe for the Court's consideration.

## I.   BACKGROUND[4]

Plaintiff is the owner of the FACEGA trademark, U.S. Trademark Registration No. 6,477,441, which was registered on the Principal Register of the United States Patent and Trademark Office on September 7, 2021 (the "FACEGA Mark"). *See* (Declaration of Yongkang Du (DE [15]) ("Du Decl.") ¶ 4); *see also* (Ex. 1 - United States Trademark Registrations for the FACEGA Mark ([DE 1-1])).  The FACEGA Mark is used in connection with various high-quality hand and garden tools, kitchen utensils, and personal care tools. *See* Du Decl. ¶¶ 7, 13.

On April 16, 2024, Plaintiff, Liangsword Limited, filed a Complaint against 172 defendants ("Defendants") who it alleges are e-commerce store operators that advertised,

---

[2] Defendant Treasure Gurus, LLC (Def. No. 156), represented by Glen Matthew Lindsay of Saavedra Goodwin, and a non-attorney representative for Defendant AlfaBet (Def. No. 147) also appeared at the hearing, but both have since been dismissed from this action.  *See* (DE [64] & [104]).

[3] The Heitner Defendants' Response is also brought on behalf of Defendants BRAVE CAPS (Def. No. 6), LUCKY COKIE (Def. No. 11), YUANQUQU (Def. No. 15), Six6686 (Def. No. 63), MIANLAN (Def. No. 64), Caizhitong Trading Co., Ltd. (Def. No. 81), and Enjoymoment (Def. No. 128).  These defendants, however, did not appear at the hearing on Plaintiff's Motion, and on June 10, 2024, the Court entered a preliminary injunction against them.  *See* (DE [67]).  If these defendants intend to challenge the continuation of the preliminary injunction against them, they must move for this separately.

[4] The factual background is taken from Plaintiff's Complaint (DE [1]), its supporting Declarations (DE [15] & [16]), and the Motion (DE [27]).

offered for sale, and sold products that infringed on the FACEGA Mark. *See* (Compl. (DE [1])); (Schedule A (DE [19])). Defendants offered goods bearing the FACEGA Mark to consumers across the United States, including in the State of Florida and within the Southern District of Florida. *See* Du Decl. ¶ 10. Defendants are not now, nor have they ever been authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of Plaintiff's Mark. *See id*. ¶¶ 13-14.

Plaintiff's counsel "reviewed the images and depictions displayed on the websites, including the domain name, product listing, information of the product, and detailed seller information of all sellers identified on Schedule A." *See* (Declaration of Andrew Palmer in Support of Plaintiff's Ex Parte Motion for Entry of a Temporary Restraining Order (DE [16]) ("Palmer Decl.") ¶ 4). "After reviewing the infringing evidence," counsel believes that "it is apparent that the activities of the sellers identified in Schedule A are consistent with the general patterns of online counterfeiting activities." *See id*. ¶ 5.

Plaintiff's Complaint brings claims against Defendants for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement. *See* (Compl. (DE [1])). On April 30, 2024, Plaintiff filed its *Ex Parte* Motion for Entry of a Temporary Restraining Order, Including a Temporary Injunction and a Temporary Asset Restraint (DE [20]). On May 14, 2024, this Court issued a Sealed Order Granting Plaintiff's *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO") and temporarily restrained Defendants from infringing the FACEGA Mark at issue. *See* (DE [24]). On May 20, 2024, Plaintiff filed this Motion for Entry of a Preliminary Injunction (DE [27]). In accordance with the Court's May 14, 2024, TRO and its subsequent May 22, 2024 Sealed Order Setting Hearing on Plaintiff's Motion for Entry of a Preliminary Injunction and Extending Temporary

Restraining Order (DE [32]), Plaintiff properly served Defendants with a copy of the Complaint, all filings in this matter, the Court's May 14, 2024, TRO, and the Court's May 22, 2024, Order extending the TRO and scheduling the preliminary injunction hearing. *See* (DE [38]).

On June 6, 2024, the Court conducted a hearing on Plaintiff's Motion, at which the Responding Defendants appeared. *See* (DE [63]). The Court proceeded to enter a preliminary injunction as to all Defendants, except the Responding Defendants. *See* (DE [67]). Pursuant to the Heitner Defendants' Motion for Continuance and to Set Briefing Schedule (DE [50]), joined by the Pittaway Defendants and Wang Defendants in the June 6, 2024, hearing, the Court granted the Heitner, Pittaway, and Wang Defendants an extension of time to respond to Plaintiff's Motion and extended the existing Temporary Restraining Order through the resolution of this Motion. *See* (DE [65]).

## II. <u>LEGAL STANDARD</u>

Title 15 U.S.C. §1114 provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." To establish a trademark infringement claim, a plaintiff must show (1) the validity of its mark and (2) that the defendant's use of the mark is likely to cause confusion. *Dieter v. B & H Indus. of Sw. Fla., Inc.*, 880 F.2d 322, 326 (11th Cir. 1989).

For a false designation of origin claim under 15 U.S.C. § 1125(a), a plaintiff must show (1) "that the plaintiff had enforceable trademark rights in the mark or name," and (2) "that the defendant made unauthorized use of it 'such that consumers were likely to

4

confuse the two.'" *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007).

To obtain a preliminary injunction, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case).

### III. DISCUSSION

Considering the four factors for obtaining a preliminary injunction, the Court finds that Plaintiff fails to satisfy each of the four factors as to the Responding Defendants. The Court discusses each factor in turn.

#### A. Substantial likelihood of success on the merits

Plaintiff fails to show a substantial likelihood of success on the merits in light of the lack of control Responding Defendants have over the product listings for the items they offer for sale or have sold. Plaintiff's Complaint alleges claims for (1) trademark counterfeiting and infringement, 15 U.S.C. § 1114, (2) false designation of origin, 15 U.S.C. § 1125(a), common law unfair competition, and common law trademark infringement. *See* (DE [1] ¶¶ 26–39). However, Plaintiff's Motion strictly focuses on its trademark infringement and false designation of origin claims in arguing that it has a substantial likelihood of success on the merits. *See* (Mot. (DE [27]) at 4). Responding Defendants advance arguments that cut across the elements for both of these claims. First, Responding Defendants argue that they did not "use" the FACEGA Mark in their

5

listings, claiming that the FACEGA Mark was added without their knowledge or authorization. Second, the Pittaway and Wang Defendants argue that Plaintiff does not have a valid, enforceable trademark in the FACEGA Mark.

### 1. "Use" of FACEGA Mark

While Plaintiff's Complaint does not specify the particular marketplace platform through which Defendants' purported infringing activities took place, the Responding Defendants appear to exclusively sell products through Walmart's online third-party marketplace platform (https://marketplace.walmart.com/) (the "Walmart Marketplace"). Responding Defendants explain, and Plaintiff does not deny, that Walmart Marketplace permits multiple marketplace sellers to offer the same item, and Walmart Marketplace then selects the best content to display in connection with the item, drawing this content from what the various sellers provide. *See, e.g.*, (Ex. 5 – Walmart "How to Update Content" (DE [93-5])). This process does not apply if the seller is the brand owner or an authorized reseller. *Id.* Plaintiff argues that the system controls in place regarding content editing for product listings are "strict" and "require[] Walmart's approval," but Plaintiff does not dispute Responding Defendants' description of the content editing process—Walmart Marketplace, not individual sellers, controls the selection of content displayed in product listings. *See, e.g.*, (Reply to Heitner Defs.' Resp. (DE [127]) at 3–4).

Responding Defendants have all submitted sworn affidavits stating that they did not add Plaintiff's FACEGA Mark to any of their listings for items for sale. *See* (Ex. C – Decl. of Heitner Defs. (DE [82-3]) ¶ 4); (Decl. of Yunqiang Hu (DE [93-6]) ¶¶ 6–7); (Decl. of Li Xin (DE [93-7]) ¶¶ 6–7); (Decl. of Xi Huang (DE [93-8]) ¶¶ 6–7); (Decl. of Qieqie Zhang (DE [93-9]) ¶¶ 6–7); (Ex. B. – Decl. of Weiyan Cao (DE [89-2]) ¶¶ 3, 12–13); (Ex. C – Decl. of Huaiqing Shen (DE [89-3]) ¶ 3). The Heitner Defendants further assert in

their affidavits that they were not aware that Plaintiff's FACEGA Mark had been added to any of their listings and were never notified by Walmart Marketplace of the modification of their listings that purportedly incorporated Plaintiff's FACEGA Mark. *See* (Ex. C – Decl. of Heitner Defs. (DE [82-3]) ¶ 4).

In light of the shared understanding of Walmart Marketplace's content editing process, which places control of the content displayed in listings squarely in Walmart Marketplace's hands, as well as Responding Defendants' sworn statements denying their addition of the FACEGA Mark to any of the subject listings, the Court finds that Plaintiff is not substantially likely to succeed on the merits with respect to its trademark infringement or false designation of origin claims because Responding Defendants may not have "used" the FACEGA Mark in their listings of items for sale. Plaintiff does not directly challenge Responding Defendants' attestations that they did not add Plaintiff's FACEGA Mark to their listings, instead speculating that Walmart Marketplace's review process or Responding Defendants' active monitoring of their listings should have caught this issue. While Plaintiff can flesh out these arguments at other stages of the proceedings, for the purposes of assessing whether a preliminary injunction is appropriate, these arguments are not sufficient to show a substantial likelihood of success on the merits.

As a final note, the parties debate whether Plaintiff itself manipulated the product listings to cause the FACEGA Mark to be added to Responding Defendants' listings, thus manufacturing the evidence submitted in support of this action. Because it is sufficient that another party, whether Walmart Marketplace, Plaintiff, or another third party, plausibly may have caused the FACEGA Mark to be added to Responding Defendants' listings without Responding Defendants' consent or awareness for the Court to deny relief

under the preliminary injunction standard, the Court declines to make a finding as to Responding Defendants' claims regarding Plaintiff's alleged wrongdoing at this juncture.[5]

## 2. Validity of Plaintiff's rights over the FACEGA Mark

The Pittaway and Wang Defendants separately challenge Plaintiff's likelihood of success on the merits by contesting the validity of Plaintiff's rights over the FACEGA Mark. The Pittaway and Wang Defendants argue that Plaintiff engaged in fraud on the U.S. Patent and Trademark Office ("USPTO") by applying for the FACEGA Mark through the TEAS Plus system using the credentials of Richard Withers, Esq. ("Withers") without his authorization. Citing to an affidavit Withers submitted in connection with a different lawsuit, Withers stated that he did not use an electronic signature or authorize other individuals to enter his electronic signature on any trademark applications. (Ex. 2 – Affidavit of Richard Withers (DE [93-2]) ¶ 7). Withers instead stated that he submitted "less than a dozen" trademark applications with an ink signature. *Id.* ¶ 6. Withers further stated that he was responsible for applications filed in the names of clients located in the United States, and other attorneys handled applications for clients located in China. *Id.* ¶ 5.

The Pittaway Defendants claim that, even though Withers' affidavit relates to another case, it rebuts the presumed validity of Plaintiff's FACEGA Mark because Plaintiff's trademark application for the FACEGA Mark did not include an ink signature from Withers. *See* (Ex. 2 – FACEGA Trademark Application (DE [128-2])). The Wang Defendants challenge the validity of Plaintiff's trademark application for the FACEGA Mark because they identify that the signatory to the application, who is identified as the

---

[5] Because the Court finds Plaintiff's argument is not sufficient to show a substantial likelihood of success on the merits, the inquiry can end here without further discussion. As this type of issue is likely to come before the Court again, however, the Court still analyzes the other factors for the benefit of the parties.

trademark owner, Daocai Wei, entered a physical address in China, which contradicts Withers' statement that he only represented U.S.-based applicants.  *See id.*

Plaintiff responds that either the attorney or the applicant can sign the TEAS trademark application declaration, and in the context of the FACEGA application, the applicant, Daocai Wei, signed the application, not Withers.  *See* (Ex. 2 – FACEGA Trademark Application (DE [128-2])).  Plaintiff further argues that the Pittaway and Wang Defendants have not provided sufficient evidence to meet the standard for securing cancellation of a trademark registration procured through fraud.

Assuming the Court were to judicially notice and treat as credible Withers' affidavit, the Court is not persuaded that the statements made by Withers in the affidavit are sufficiently relevant to degrade Plaintiff's likelihood of success on the merits given the information in front of the Court.  Withers' statement refers to applications he signed and submitted on behalf of clients, but he makes no statement that directly relates to those applications for which he was identified as the applicant's attorney but did not sign the declaration attesting to the validity and accuracy of the application.  While this is certainly an avenue that Responding Defendants can probe further throughout these proceedings, there is insufficient information at this stage for the Court to find that Withers' affidavit affects Plaintiff's likelihood of success on the merits.

The Pittaway Defendants' supplemental argument that the chronology of the events leading up to this action are suspicious and the Wang Defendants' supplemental argument that the non-existence of the website from which the actual-use specimen submitted to the USPTO was captured are similarly unpersuasive.  Like the allegations that Plaintiff itself manipulated the content editing on Responding Defendants' listings for items for sale, speculative circumstantial evidence is insufficient to combat Plaintiff's

likelihood of success on the merits where Plaintiff has submitted a presumptively valid trademark registration.

Nonetheless, because the Court credited Responding Defendants' first argument, that Responding Defendants did not "use" the FACEGA Mark in their listings, Plaintiff has failed to show a substantial likelihood of success on the merits.

### B. Other preliminary injunction factors

While a likelihood of success on the merits is the most important factor to consider in connection with an application for a preliminary injunction, the Court briefly considers the arguments made in connection with the remaining three factors. For reasons similar to those discussed in connection with the "substantial likelihood of success on the merits" factor, the Court finds for Responding Defendants on each factor.

<u>Irreparable harm</u>. While the Court does not doubt the significant harm Plaintiff may incur as a result of infringing activities, it does not find that the presence or absence of injunctive relief will have a meaningful impact on this harm. Plaintiff argues that it will suffer irreparable harm in the absence of injunctive relief because Plaintiff will suffer continued financial loss and reputation damage. Plaintiff claims that consumers will not be able to identify a genuine FACEGA product from the counterfeit products advertised and sold by Responding Defendants, and Plaintiff will lose sales of its genuine products to Responding Defendants. Plaintiff further states that Responding Defendants conceal their true identities and operate from outside of the United States, so Plaintiff will struggle to recover any monetary damages it might obtain through this action in the absence of injunctive relief. Responding Defendants counter that Plaintiff will not suffer irreparable harm because Responding Defendants never marketed or intended to market items under the FACEGA trademark and have corrected the listings in question.

The contradiction in Plaintiff's Reply brief illustrates the Court's issue with Plaintiff's claim to irreparable harm—Plaintiff simultaneously states that "[Responding Defendants'] consent is not required for modifications of product listings [because] the ultimate authority to approve and modify content rests solely with Walmart," while arguing that it will suffer irreparable reputational harm through Responding Defendants' "undermin[ing] [of] Plaintiff's ability to control the quality and nature of FACEGA products."  *See* (Reply to Pittaway Defs.' Resp. (DE [128]) at 9–10).  If Responding Defendants do not have the ultimate authority to control the content in their product listings, Plaintiff's purported irreparable harm does not seem to flow from Responding Defendants' conduct but rather from Walmart Marketplace's content modification processes and controls.  Even if the Court were to grant the injunctive relief requested by Plaintiff, it is more than plausible that the irreparable harm would continue, subject only to Responding Defendants' round-the-clock monitoring of changes to product listings that they did not institute.  The same analysis applies as to Plaintiff's potential inability to recover monetary damages in the absence of injunctive relief—it is not clear that Responding Defendants are responsible for the harm Plaintiff alleges, so failing to freeze Responding Defendants' assets is unlikely to result in irreparable harm to Plaintiff.

<u>The balance of equities</u>.  Similarly, the Court finds that the balance of equities weighs in Responding Defendants' favor.  Plaintiff argues that the balance of hardships favors Plaintiff because it seeks injunctive relief to stop Responding Defendants from engaging in unlawful profit-making sales of infringing products, which is a practice that harms both Plaintiff and consumers.  Responding Defendants respond that the entry of a preliminary injunction "serves as a punishment for a crime Defendants did not commit" by halting Responding Defendants' ability to conduct business.  *See* (Heitner Defs.' Resp.

(DE [82]) at 9).  As discussed in connection with the previous factor, the Court is skeptical of Plaintiff's claim to hardship where the entry of the preliminary injunction will not necessarily have a meaningful impact on the stated hardship.  Additionally, Responding Defendants would certainly suffer hardship based on the fact that they do not have the ability to fully control their product listings and, therefore, would need to continuously monitor their listings for changes or face penalties for violating the injunction.

<u>The public interest</u>.  The Court finds that the public interest is not served by entry of a preliminary injunction.  Plaintiff argues that the public interest is served by the entry of a preliminary injunction because the preliminary injunction upholds trademark integrity, maintains fair competition, and protects consumers from being defrauded.  Plaintiff also claims that the entry of a preliminary injunction serves the public interest by enhancing the Court's authority through guarding Plaintiff's ability to recover a potential monetary judgment from Responding Defendants' assets.  Responding Defendants argue that the public interest is not served by the entry of a preliminary injunction because it would inform the public that individuals should be punished for things they did not do.  As discussed above, it is not apparent to the Court that the entry of a preliminary injunction would do anything for the public interest in terms of upholding trademark integrity, maintaining fair competition, or protecting consumers under a marketplace platform within which those who would be bound by the injunction do not have the final say on content modifications to their product listings.  Similarly, the Court's authority is not enhanced through guarding Plaintiff's ability to recover a potential monetary judgment where there is no substantial likelihood of a judgment being entered in Plaintiff's favor.

All in all, Plaintiff has not demonstrated that a preliminary injunction is warranted under the facts of this case.  Accordingly, it is hereby

12

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Entry of a Preliminary Injunction (DE [27]) is **DENIED as to the Responding Defendants**. The Temporary Restraining Order (DE [24]) is **VACATED as to the Responding Defendants**.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 6th day of August 2024.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF